Alisa L. Silverstein, Esq. (AS 2926)
Gary Trachten, Esq. (GT 5480)
Thomas Furth, Esq. (TF 0785)
KUDMAN TRACHTEN ALOE LLP
350 Fifth Avenue, Suite 4400
New York, NY 10118
Telephone: (212) 868-1010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
BONDA INDUSTRIAL (HK) CO., LTD.

                                      ECF Case
                                      Civil Action No.: 08 CV 5507 (PKL)(DFE)

                  Plaintiff,                **ANSWER WITH**
                                      **COUNTERCLAIM**

    -against-

TALBOT GROUP, LLC and
POTAMUS HOLDINGS, INC.
                   Defendants.
---------------------------------------------------------------X
THE TALBOT GROUP, LLC and
POTAMUS HOLDINGS, INC.

        Plaintiffs on the Counterclaim,

    -against-

BONDA INDUSTRIAL (HK) CO., LTD
and BONNIE WONG,

        Defendants on the Counterclaim.
---------------------------------------------------------------X

       Defendants, The Talbot Group, LLC (The Talbot Group), sued herein as Talbot Group,

and Potamus Holdings, Inc. (Potamus Holdings), by its attorneys, Kudman Trachten Aloe LLP,

as and for its Answer to Plaintiff's Complaint and as for its Counterclaims set forth as follows:

## NATURE OF THE ACTION

       1.       Admit that in or about 2007, Bonda Industrial (HK) Co., Ltd. ("Bonda")

entered into an agreement with The Talbot Group whereby Bonda would supply to The Talbot Group certain goods to be specifically manufactured to The Talbot Group's specifications, but deny all other allegations set forth in paragraph 1.

## THE PARTIES

2.  Deny knowledge and information sufficient to form a belief in the allegations as set forth in paragraph 2 of the Complaint.

3.  Admit that The Talbot Group was and is a limited liability company with its principal place of business located at 15 East 32nd Street, New York, New York but deny all other allegations set forth in paragraph 3 of the Complaint.

4.  Admit that Potamus was and is a corporation with its principal place of business located at 15 East 32nd Street, New York, New York but deny all other allegations set forth in paragraph 4 of the Complaint.

5.  Deny the allegations set forth in paragraph 5 of the Complaint.

## FACTUAL ALLEGATIONS

6.  Deny knowledge and information sufficient to form a belief in the allegations as set forth in paragraph 6 of the Complaint.

7.  Admit that Bonda has supplied to The Talbot Group certain manufactured goods in accordance with specifications provided by The Talbot Group but deny all other allegations set forth in paragraph 7 of the Complaint.

8.  Deny the allegations set forth in paragraph 8 of the Complaint.

9.  Deny the allegations set forth in paragraph 9 of the Complaint to the extent that it does not set forth or represent the complete "course of conduct" between the parties.

10. Deny the allegations set forth in paragraph 10 of the Complaint.

11. Admit that in or around July 2007, Bonda agreed to supply the fall/winter 2007 Collection but deny all other allegations set forth in paragraph 11 of the Complaint.

12. Admit that in or about August 2007 Bonda shipped the first part of the Collection to The Talbot Group but deny all other allegations set forth in paragraph 12 of the Complaint.

13. Admit that in or about September 11, 2007, The Talbot Group complained to Bonda that some of the manufactured clothing was defective.

14. Admit that The Talbot Group and Bonda agreed to a reduced rate for a limited amount of the goods at issue but deny all other allegations set forth in paragraph 14 of the Complaint.

15. Deny the allegations set forth in paragraph 15 of the Complaint.

16. Admit that an invoice was sent to The Talbot Group for the amount of $153,607.54 but deny knowledge and information as to when the invoice was sent and deny all other allegations set forth in paragraph 16 of the Complaint.

17. Deny the allegations set forth in paragraph 17 of the Complaint.

18. Admit that on or around December 3, 2007, The Talbot Group corresponded with Bonda concerning the pricing for the Spring 2008 collection but deny all other allegations set forth in paragraph 18 of the Complaint.

19. Deny the allegations set forth in paragraph 19 of the Complaint.

20. Deny the allegations set forth in paragraph 20 of the Complaint.

21. Deny the allegations set forth in paragraph 21 of the Complaint.

22. Deny the allegations set forth in paragraph 22 of the Complaint.

23. Deny the allegations set forth in paragraph 23 of the Complaint.

24. Deny the allegations set forth in paragraph 24 of the Complaint.

25. Deny the allegations set forth in paragraph 25 of the Complaint.

26. Deny the allegations set forth in paragraph 26 of the Complaint.

## COUNT I
## BREACH OF CONTRACT

27. Defendants repeat, reiterate and reallege the answers set forth in paragraphs 1 through 26 of this Answer with the same force and effect as if set forth in full herein.

28. Deny the allegations set forth in paragraph 28 of the Complaint.

29. Deny the allegations set forth in paragraph 29 of the Complaint.

30. Deny the allegations set forth in paragraph 30 of the Complaint.

31. Deny the allegations set forth in paragraph 31 of the Complaint.

32. Deny the allegations set forth in paragraph 32 of the Complaint.

## COUNT II
## CONVERSION

33. Defendants repeat, reiterate and reallege the answers set forth in paragraphs 1 through 32 of this Answer with the same force and effect as if set forth in full herein.

34. Admit that Bonda manufactured or arranged for the manufacture of certain goods and delivered goods to Talbot Group which were part of the fall/winter 2007 Collection but deny all other allegations set forth in paragraph 34 of the Complaint.

35. Deny the allegations set forth in paragraph 35 of the Complaint.

36. Deny the allegations set forth in paragraph 36 of the Complaint.

37. Deny the allegations set forth in paragraph 37 of the Complaint.

38. Deny the allegations set forth in paragraph 38 of the Complaint.

39. Deny the allegations set forth in paragraph 39 of the Complaint.

## COUNT III
## PROMISSORY ESTOPPEL

40. Defendants repeat, reiterate and reallege the answers set forth in paragraphs 1 through 39 of this Answer with the same force and effect as if set forth in full herein.

41. Admit that Talbot Group agreed to pay certain quoted prices for goods conforming to certain specifications upon receipt and acceptance but deny all other allegations set forth in paragraph 41 of the Complaint.

42. Deny the allegations set forth in paragraph 42 of the Complaint.

43. Deny the allegations set forth in paragraph 43 of the Complaint.

44. Deny the allegations set forth in paragraph 44 of the Complaint.

45. Deny the allegations set forth in paragraph 45 of the Complaint.

## COUNT IV
## UNJUST ENRICHMENT

46. Defendants repeat, reiterate and reallege the answers set forth in paragraphs 1 through 45 of this Answer with the same force and effect as if set forth in full herein.

47. Deny the allegations set forth in paragraph 47 of the Complaint.

48. Deny the allegations set forth in paragraph 48 of the Complaint.

49. Deny the allegations set forth in paragraph 49 of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

50. Plaintiff has failed to mitigate its damages.

## SECOND AFFIRMATIVE DEFENSE

51. Plaintiff breached the contract between the parties by failing to timely deliver conforming goods to Talbot Group.

**THIRD AFFIRMATIVE DEFENSE**

52. Plaintiff brought the instant Complaint against the defendants with unclean hands.

**AS AND FOR DEFENDANTS'
COUNTERCLAIMS AGAINST PLAINTIFF**

**Common Facts**

53. The Talbot Group designs and procures goods manufactured to its specifications, including children's apparel, under the brand name "Hippototamus" and distributes such goods exclusively to Potamus Holdings.

54. Potamus Holdings sells the Hippototamus goods through its operation of the Hippototamus retail stores and website.

55. Commencing in or about 2007, Bonda entered into an agreement with The Talbot Group in which it was agreed that Bonda would supply certain goods that would be specifically manufactured to The Talbot Group's specifications.

56. Potamus Holdings was at all times an intended third party beneficiary of the agreement between Bonda and The Talbot Group.

57. In accordance with the agreement and as reflected in the course of dealings between the parties, The Talbot Group sent technical packages and samples of goods to Bonda for the manufacturing of its goods.

58. In accordance with the agreement and as reflected in the course of dealings between the parties, Bonda would contract with factories on behalf of The Talbot Group to manufacture the goods as specified in the technical packages provided by The Talbot Group.

59. In accordance with the agreement and as reflected in the course of dealings

between the parties, Bonda would contract with vendors including but not limited to fabric mills, notion suppliers, trim suppliers, label/tag suppliers, embroiderers, and package suppliers on behalf of The Talbot Group to manufacture the goods as specified in the technical packages provided by The Talbot Group.

60. In accordance with the agreement and as reflected in the course of dealings between the parties, Bonda submitted samples of garments, samples of fabrics, color labdips, notions, trims, labels/tags and other details for approval by The Talbot Group.

61. In accordance with the agreement and as reflected in the course of dealings between the parties, The Talbot Group then issued purchase orders to Bonda setting forth the agreed prices, number of units per item and delivery dates.

62. In accordance with the agreement and as reflected in the course of dealings between the parties, The Talbot Group tendered a fifty (50%) deposit on the purchase order once all pre-production samples were approved by The Talbot Group.

63. In accordance with the agreement and as reflected in the course of dealings between the parties, after the production samples were approved by The Talbot Group, Bonda would instruct the factories to proceed with the production of the goods and was responsible for performing all quality control matters during production as well as performing inspections of the goods after production on behalf of The Talbot Group.

64. In accordance with the agreement and as reflected in the course of dealings between the parties, once the goods were approved and accepted after production inspection, Bonda shipped the goods to The Talbot Group.

65. In accordance with the agreement and as reflected in the course of dealings between the parties, The Talbot Group tendered the balance owed on the purchase order once all

goods were inspected and accepted by The Talbot Group.

66. At all the times stated herein, Bonda was aware that Hippototamus was and is a trademarked brand wholly owned by The Talbot Group.

67. At all the times stated herein, Bonda was the sole supplier/producer of the children's apparel bearing the brand name Hippototamus.

68. At all the times stated herein, Bonda was responsible to control the quantities of goods, fabrics, notions, trims, labels and tags ordered, produced, and distributed to the factories on behalf of the Talbot Group to insure that excess merchandise would not circulate in non-authorized sales channels.

69. At all the times stated herein, Bonda, being aware that The Talbot Group had a trademark on the Hippototamus brand, promised that it would not provide it's merchandise, fabrics, notions, trims, labels/tags or any other affiliated items to any other person or business.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

70. Defendants repeat, reiterate and reallege each and every allegation set forth in paragraphs 1 through 69 herein with the same force and effect as if set forth in full herein.

72. Bonda failed to meet the delivery dates set forth in the purchase orders, including but not limited to for Purchase Order Nos: 2007842, 2007843, 2007844, 2007845, 2007846.

73. The Talbot Group agreed to extend the above referenced delivery dates in order to mitigate its own damages.

74. Despite and in breach of the agreement between the parties, Bonda thereafter failed to provide The Talbot Group with production samples prior to shipment for its fall/winter production.

75. A substantial portion of the merchandise delivered to The Talbot Group under the

8

above referenced purchase orders was defective and contained substantial manufacturing defects.

76. The Talbot Group timely complained about the defective merchandise.

77. Bonda was given a reasonable opportunity to cure.

78. Bonda refused to and/or could not timely deliver conforming goods.

79. Bonda breached its contract with The Talbot Group by failing to deliver the merchandise in accordance with the agreed upon terms as aforesaid and providing defective merchandise.

80. As a result of Bonda's breaches as aforesaid, defendants were unable to sell certain merchandise and/or was forced to discount said merchandise in order to mitigate its damages resulting in lost business and/or lost business opportunities for The Talbot Group.

81. As a result, defendents suffered significant financial losses, including incidental and consequential damages pursuant to Section 2-715 of the Uniform Commercial Code ("UCC") and damage to its reputation in an amount to be determined by a trier of fact.

### SECOND CAUSE OF ACTION
**(Breach of Warranty)**

82. Defendants repeat, reiterate and reallege each and every allegation set forth in paragraphs 1 through 81 herein with the same force and effect as if set forth in full herein.

83. As more fully described above, the agreement between Bonda and The Talbot Group contained certain warranties, both express and implied, including but not limited to warranties and representations that the clothing would conform to the descriptions and specifications set forth in the technical packages provided by The Talbot Group.

84. The Talbot Group relied on the aforementioned warranties in deciding to order the goods from Bonda.

85. Bonda breached the express warranties by delivering defective merchandise that

9

did not conform to the descriptions and specifications provided.

86. Bonda breached the implied warranty of merchantability by delivering non-conforming and/or defective merchandise.

87. As a result of Bonda's breach of warranties, the defendants were unable to sell certain merchandise and/or was forced to discount said merchandise in order to mitigate its damages resulting in lost business and/or lost business opportunities for The Talbot Group.

88. As a result, the defendants suffered significant financial losses and damage to its reputation in an amount to be determined by a trier of fact.

### THIRD CAUSE OF ACTION
**(Breach of Contract)**

89. Defendants repeat, reiterate and reallege each and every allegation set forth in paragraphs 1 through 88 herein with the same force and effect as if set forth in full herein.

90. The Talbot Group placed orders from Bonda pursuant to Purchase Order Nos: 2007847, 2007848, 2007849 and 2007850.

91. Said orders placed under the aforementioned purchase orders constituted The Talbot Group's entire Spring 2008 collection.

92. On or about January 17, 2008, The Talbot Group learned that Bonda ceased all production for the Spring 2008 collection and refused to deliver the goods.

93. Bonda breached its contract with The Talbot Group by failing to deliver the merchandise in accordance with the agreed upon terms.

94. The Talbot Group fully performed its obligations in accordance with the terms of the agreement.

95. As a result of Bonda's breaches as aforesaid, the defendants had no Spring 2008 collection, incurred expenses for the fabric of goods that were never manufactured, incurred

production expenses for goods that were never produced and incurred other additional expenses and costs.

96. Bonda's breaches as aforeseaid, resulted in a significant los of profits for the defendants.

97. As a result, the defendants suffered significant financial losses and damage to its reputation, along with incidental and consequential damages pursuant to UCC Sections 2-712 and 2-715, in an amount to be determined by a trier of fact.

## FOURTH CAUSE OF ACTION
### (Conversion)

98. Defendants repeat, reiterate and reallege each and every allegation set forth in paragraphs 1 through 97 herein with the same force and effect as if set forth in full herein.

99. At times, The Talbot Group provided specific fabrics to Bonda for use in the manufacturing of certain Hippototamus clothing.

100. Bonda wrongfully, willfully and illegally took Hippototamus fabrics and converted the fabrics for its own use and profit.

101. Bonny Wong, an additional defendant on the counterclaim ("Wong"), has at all times been the Director and principal owner of Bonda.

102. Wong, individually and acting in the scope of her agency on behalf of Bonda, wrongfully, willfully and illegally took Hippototamus fabrics and converted the fabrics for her and Bonda's own use and profit.

103. Upon information and belief, Bonda and Wong, individually and/or collectively, converted these items in order to illegally sell and/or facilitate in the illegal sale of Hippototamus clothing on various Chinese websites, including but not limited to taobao.com and paipai.com.

104. As a result of said conversion, defendants have suffered significant financial

losses, lost business, lost business opportunities and damage to its reputation in an amount to be determined by a trier of fact.

## FIFTH CAUSE OF ACTION
### (Breach of Contract)

105. Defendants repeat, reiterate and reallege each and every allegation set forth in paragraphs 1 through 104 herein with the same force and effect as if set forth in full herein.

106. Pursuant to the agreement between Bonda and The Talbot Group, no more than three (3%) percent overruns were allowed on the merchandise produced by Bonda.

107. The very purpose of this agreement was to prevent the unauthorized manufacturing, sale and distribution of Hippototamus goods.

108. Bonda violated this agreement by producing and/or facilitating production of a large percentage of overruns (the full extent of which is not yet known) without The Talbot Group's knowledge or approval resulting in Hippototamus brand clothing being illegally sold and distributed on the internet.

109. The Talbot Group fully performed its obligations in accordance with the terms of the agreement.

110. Upon information and belief, as a result of Bonda's breach thousands of Hippototamus items are being and were illegally sold and distributed.

111. As a result of said breach, defendants have suffered significant financial losses, lost business, lost business opportunities and damage to its reputation in an amount to be determined by a trier of fact.

## SIXTH CAUSE OF ACTION
### (Trademark Infringement - Federal Unfair Competition/False Designation of Origin)

112. Defendants repeat, reiterate and reallege each and every allegation set forth in paragraphs 1 through 111 herein with the same force and effect as if set forth in full herein.

113. The Talbot Group has been and now is engaged in the business of manufacturing, importing, promoting and selling in interstate commerce goods consisting of children's clothing and has promoted and marketed such goods under the trademark Hippototamus. The Talbot Group has used the trademark Hippototamus in commerce since at least as early as 1999. The Talbot Group has advertised its goods nationally under the mark Hippototamus, and the trademark has become an asset of substantial value as a symbol of The Talbot Group's high quality goods.

114. Bonda is, upon information and belief, engaged in the business of promoting, selling and distributing goods, including children's clothing which is similar to The Talbot Group's goods, under the mark Hippototamus.

115. All goods manufactured for The Talbot Group pursuant to its agreements with Bonda were made exclusively for The Talbot Group. The Talbot Group has not authorized the manufacture or shipment of its goods by Bonda to any other entity or their distribution via the internet or in any other manner.

116. The Talbot Group has not authorized the use of its Hippototamus trademark on any goods other than those shipped to The Talbot Group. Bonda was specifically instructed and understood that the use of Hippototamus labels and tags was restricted to goods shipped to The Talbot Group and that the trademark was the exclusive intellectual property of The Talbot Group.

117. Bonda has, upon information and belief, created counterfeit labels and tags bearing The Talbot Group's Hippototamus trademark and caused goods bearing such labels and tags to be offered for sale via the internet in commerce which the U.S. Congress may regulate.

118. Bonda's use of the mark Hippototamus is without The Talbot Group's authorization. Upon information and belief, the mark is being used on goods which have not been manufactured to The Talbot Group's specifications or under its supervision and control.

119. The Talbot Group's trademark Hippototamus is associated with children's apparel emanating from The Talbot Group. Bonda's interstate use of the identical mark constitutes a false designation of origin and constitutes the use of a false description or representation in interstate commerce.

120. Bonda's conduct is likely to deceive, cause mistake and confuse members of the public that Bonda and its distributors are associated with, sponsored by or authorized by The Talbot Group.

121. Bonda, in misappropriating the trademark Hippototamus has acted willfully and with full knowledge of The Talbot Group's rights to the Hippototamus mark and Bonda has used this false designation of origin and description in contravention of 15 U.S.C. § 1125(a).

122. As a result of Bonda's acts and its continued use of the trademark Hippototamus, unless restrained, Bonda will continue to cause serious and irreparable injury to The Talbot Group.

123. By reason of the foregoing, The Talbot Group seeks damages to be determined at trial, but believed to exceed $2,000,000, and is entitled to all of the remedies provided for in section 43(a) of the Trademark Act.

124. The Talbot Group has no adequate remedy at law.

## SEVENTH CAUSE OF ACTION
### (Common Law Trademark Infringement)

125. Defendants repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 124 herein with the same force and effect as if set forth in full herein.

126. Bonda's use of the trademark Hippototamus in offering, selling and distributing its unauthorized goods constitutes a violation of The Talbot Group's trademark rights under common law.

127. The Talbot Group has no adequate remedy at law.

## EIGHTH CAUSE OF ACTION
### (New York State Unfair Competition)

128. Defendants repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 127 herein with the same force and effect as if set forth in full herein.

129. Bonda's use of the trademark Hippototamus in offering, selling and distributing its unauthorized goods is likely to result in injury to The Talbot Group's business reputation and dilution of the distinctive quality of The Talbot Group's trademarks.

130. Bonda's acts constitute violation of § 368-d of the New York General Business Law.

131. By reason of the foregoing, The Talbot Group seeks damages to be determined at trial but believed to exceed $2,000,000, and is entitled to all of the remedies provided for in § 368-d of the New York General Business Law.

**WHEREFORE,** the defendants respectfully demand a Trial by Jury and request that the plaintiff's complaint be dismissed in its entirety; that defendants' counterclaims be granted in their entirety and for such other and further relief as this Court deems appropriate.

Dated: New York, New York
      July 2, 2008

                                            Kudman Trachten Aloe, LLP

                                            By: ___/s/Alisa L. Silverstein_____
                                                Alisa L. Silverstein (AS 2926)
                                                Gary Trachten (GT 5480)
                                                Thomas Furth (TF 0785)
                                                *Attorneys for Defendants*
                                          350 Fifth Avenue, Suite 4400
                                          New York, NY 10118
                                          (212) 868-1010